UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| PAMELA ROMERO, on behalf of S.B.G., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 17-188-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Pamela Romero (hereafter, "Romero" or the "Plaintiff") and Defendant Nancy A. Berryhill (hereafter, the "Defendant" or the "Commissioner") have filed cross-motions for summary judgment. [Record Nos. 14, 16] Romero challenges the Commissioner's finding that her minor child (hereafter, "SGB") is no longer disabled. She contends that benefits should be awarded or, in the alternative, that the matter should be remanded for further proceedings. However, the Commissioner asserts that the decision to discontinue benefits is supported by substantial evidence and should be affirmed. For the reasons that follow, the Romero's motion will be denied and the Commissioner's motion will be granted.

I.      PROCEDURAL HISTORY

Romero's daughter, SGB, was born in September 1999. [Administrative Transcript, "Tr.," 44] SBG had severe developmental delays with respect to speech and language as a young child. [Tr. 250] She was awarded Supplemental Security Income ("SSI") benefits in February 2003 based on these limitations. The Commissioner reevaluated SBG's claim when she was 12 years old and determined that SBG was no longer disabled. [Tr. 55-56] The

decision was upheld on reconsideration and by an Administrative Law Judge ("ALJ") following an administrative hearing. [Tr. 78] The Appeals Council denied the Romero's request for review on May 24, 2017. As a result, Romero has exhausted her administrative remedies and this matter is ripe for review under 42 U.S.C. §§ 1383(c)(3) and 405(g).

## II. BACKGROUND

SBG began receiving SSI benefits on February 12, 2003, due to a communication disorder. [Tr. 52] At nearly four years old, she was able to say "mommy" and "daddy," but no other intelligible words. [Tr. 53] When SBG's eligibility for benefits was reviewed in 2012, she was a healthy sixth grader who had only received treatment for typical childhood illnesses. [Tr. 268-291] Romero completed a continuing disability questionnaire on SBG's behalf and listed "autism" as the condition that limited the child's ability to do the same things as other children her age. [Tr. 175]

Timothy Baggs, Psy. D., performed a psychological consultative examination in March 2012. [Tr. 293] Romero advised Baggs that SBG had been diagnosed with autism seven years ago, but was not receiving any psychiatric or psychological treatment. [Tr. 296] She also told Baggs that SBG engaged in pica behavior but, on further inquiry, Baggs determined that this had not occurred in several years. [Tr. 295]

Baggs administered the Weschler Intelligence Scale for Children-IV ("WISC-IV") and the Wide Range Achievement Test-IV. [Tr. 293-302] The WISC-IV results suggested that SBG was functioning intellectually in the low-average range. [Tr. 297] The Wide Range Achievement Test-IV indicated that SBG's ability to read, spell, and perform math computations was several grade levels below her actual grade at the time. [Tr. 298] Specifically, her reading grade equivalent was 3.9; spelling was 4.0; and math computation

was 2.2. [Tr. 298] Baggs did not believe that SBG's symptoms were consistent with autism but, instead, with a "very mild pervasive developmental disorder and/or [a] learning disability related to reading and mathematics." [Tr. 301]

Kara Kolenda, M.A., performed a speech evaluation in April 2012. [Tr. 305] Kolenda found that SBG's vocal quality and fluency were normal during spontaneous communication. [Tr. 306] She demonstrated no articulation errors and her speech was completely intelligible at all times during the assessment. *Id.* SBG possessed normal language ability for all tasks and her ability to follow directions and understand varying degrees of complex input was adequate. *Id.* Ultimately, Kolenda concluded that SBG had normal communication abilities which should support performance of all academic, vocational, and social tasks. *Id.*

Romero was notified on May 14, 2012, that SBG was no longer disabled under the Social Security Act (hereafter, the "Act") and, therefore, no longer qualified for SSI. [Tr. 59] Later that month, SBG presented to Cumberland River Behavioral Health Center for mental health treatment. [Tr. 322] Romero advised the clinician that SBG had been diagnosed with autism when she was five, that she had difficulty following directions, fought with her siblings, was disrespectful, and received poor grades. [Tr. 322] SBG participated in individual and group therapy over a period of several years at Cumberland River. Treatment notes describe her as happy and talkative, attentive and alert, and as showing positive social skills. [Tr. 355] Although the SBG's judgment was described as marginal, her therapist found her to be "verbal, active, friendly, [and] cooperative." [Tr. 356] SBG received treatment through at least 2015, during which she continued to address stress management and social skills. [Tr. 392-396]

In the meantime, Romero requested an administrative hearing before an ALJ. The request for a hearing was granted and Romero appeared without a representative in June 2015.

[Tr. 85, 35] The ALJ explained Romero's right to have a representative present and discussed with her various options for obtaining representation. [Tr. 35-36] Romero indicated that she wished to postpone the hearing to secure representation. [Tr. 36] The ALJ agreed and the hearing was rescheduled for November 2015.

But Romero still had not obtained a representative when the hearing resumed five months later. The hearing proceeded, during which Romero was the sole witness. She testified that SBG was "not very sociable" and did not like people because they made her nervous. [Tr. 45] She reported that SBG was taking Risperidone, but could not focus, had a habit of pulling her hair, and could not shower on her own. [Tr. 45-47] Further, Romero added that SBG had "sad spells" and heard voices. [Tr. 50] Romero also reported that SBG was not doing well in school and was failing "about three subjects." [Tr. 45-46]

The ALJ issued a written decision on May 2, 2016. He concluded that SBG's ability to communicate was normal as of May 1, 2012, and, accordingly, she was no longer disabled as a result of a communication impairment. [Tr. 19] The ALJ further determined that SBG had the severe impairments of developmental disorder and oppositional defiant disorder, but that neither impairment met, medically equaled, nor functionally equaled a listed impairment. Accordingly, SBG was deemed not disabled under the Act. [Tr. 23-28]

### III.    LEGAL STANDARD

Pursuant to Title XVI of the Act, "[a]n individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

The Act generally requires continued eligibility for benefits after the initial determination of eligibility, and requires termination of benefits if the individual is no longer eligible. *See* 42 U.S.C. § 423(f). Although it appears that SBG's eligibility was not reviewed until nine years after benefits were awarded, a "continuing disability review" is often performed every three years. *See* 42 U.S.C. § 1382c(H)(ii)(I).

The framework used to review SSI benefits previously awarded to a child is set forth at 20 C.F.R. § 416.994a. The ALJ determines in the first step of the analysis whether there has been "medical improvement" from the most recent favorable determination (i.e., the "comparison point decision" or "CPD"). 20 C.F.R. § 416.994a(a)(1). If there has been no medical improvement, the child's disability typically will be deemed to continue. 20 C.F.R. § 416.994a(b)(1). If there has been medical improvement, the ALJ must determine at step two whether the impairment(s) considered during the CPD still meets or equals the severity of the listed impairment it met or equaled at that time. If the impairment(s) meets or equals the severity of the listed impairment it met or equaled at the time of the CPD, the claimant typically is deemed to be disabled. 20 C.F.R. § 416.994a(b)(2).

If there has been medical improvement in the claimant's impairment(s) and the impairment(s) no longer meets or equals the severity of the listed impairment that it met or equaled at the time of the CPD, the ALJ will proceed to step three and consider whether the claimant is disabled under the rules in 20 C.F.R. § 416.924(c) and (d). 20 C.F.R. § 416.994a(b)(3). Under these provisions, the child must have a severe impairment or combination of impairments that meet, medically equal, or functionally equal one of the impairments identified in 20 C.F.R. Part 404, Subpart P, Appx. 1. 20 C.F.R. § 416.924(a); *Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003).

If a child's impairment(s) does not meet or medically equal a listed impairment, the Commissioner assesses all functional limitations caused by the impairment(s) to determine if the child's impairment(s) is functionally equivalent in severity to any of the listed impairments. 20 C.F.R. § 416.926a. The Commissioner considers six areas of development in determining whether a child's impairments are functionally equivalent to a listed impairment: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). To meet the "functional equivalence" requirement, the claimant must have a severe impairment that results in "extreme limitation" in one area of functioning or "marked limitations" in two areas of functioning.[1] 20 C.F.R. § 416.926a(d).

This Court's review is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ employed the proper legal standards in reaching his decision. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *Elam*, 348 F.3d at 125. Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Commissioner's findings are conclusive

---

[1] A "marked" limitation results when an impairment(s) seriously with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. 416.926a(e)(2)(i). "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." *Id.* An "extreme" limitation results when an impairment(s) interferes very seriously with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. 416.926a(e)(3)(i). Extreme limitation is the rating given to the worst limitations, but does not necessarily mean a total loss of ability to function. *Id.*

if they are supported by substantial evidence, even if that evidence could support a contrary decision. 42 U.S.C. § 405(g); *Elam*, 348 F.3d at 125.

## IV. DISCUSSION

### A. The ALJ Applied the Proper Standards in Considering the Opinion Evidence.

The ALJ began by reviewing the most recent favorable decision, which was rendered in 2003 ("the CPD"). [Tr. 17, 56] Notably, at the time of the CPD, SBG's speech was understood only ten percent of the time by a familiar listener and five percent of the time by an unfamiliar listener. [Tr. 56] However, SBG's speech was one hundred percent intelligible at all times at the time of review. [Tr. 53, 56] The ALJ considered this medical improvement in light of the six areas of functioning and concluded that SBG did not have a communication disorder as of May 1, 2012. [Tr. 18-22] Accordingly, the ALJ determined that the impairments present at the CPD did not meet or equal a listed impairment. [Tr. 22]

The Plaintiff does not appear to contest the ALJ's analysis with respect to the improvement of SBG's communicative impairments. Instead, she argues that benefits should be granted because the "overwhelming weight of treating and examining physician opinions prove" that SBG is disabled. [Record No. 14-1, p. 9] Focusing on step three and the allegations concerning autism, the Plaintiff contends that the ALJ ran afoul of the treating physician rule which provides that ALJs generally must afford controlling weight to the opinions of treating physicians.[2] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009). However, Romero has not identified any treating physician who provided an opinion regarding SBG's alleged

---

[2] The "treating physician rule" applies to claims filed before March 27, 2017. 20 C.F.R. § 404.1527.

- 7 -

impairments. *See* 20 C.F.R. § 404.1527(a)(2) (defining medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." *See also Messina v. Comm'r of Soc. Sec.*, 2013 WL 1196597 (S.D. Ohio March 25, 2013) (records containing treatment notes only are not "medical opinions" and therefore the treating source rule does not apply).

Virginia Barbosa, M.D., a psychiatrist at Cumberland River, treated SBG through 2015 for "limited social skills and low self-esteem (in the context of ASD)." [Tr. 563] Visit notes indicate that SBG's speech was articulated and that her thought process was goal-directed and revealed concrete thinking. [Tr. 417, 401] Further, SBG denied any suicidal or homicidal thoughts, intents, plans, or impulses. *Id.* Her insight was limited and her intellectual functioning appeared to be mildly sub-average. *Id.* Barbosa diagnosed anxiety and autism spectrum disorder, but did not provide an opinion regarding SBG's ability to function. Accordingly, the ALJ did not err in failing to discuss the factors relevant to the treating physician rule, as that rule applies only to opinion evidence.

Romero argues that the lay testimony provided during the administrative hearing "proves [SBG] is a totally disabled child." [Record No. 14-1] She also suggests that the ALJ erred by failing to make specific credibility findings regarding her testimony. Appreciable weight must be given to lay testimony when it is fully supported by the reports of treating physicians. *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1054 (6th Cir. 1983). The ALJ found that Romero's testimony was inconsistent with the evidence of record for the period since May 1, 2012. [Tr. 25] He noted, for instance, that all treating and consulting

sources described SBG as friendly, likeable, and cooperative. *Id.* Although the Plaintiff reported that SBG was unable to perform self-care, SBG advised Dr. Baggs that she simply felt lazy and did not want to go to school. [Tr. 25, 298] SBG also reported to Dr. Baggs and her therapists at Cumberland River that she had several friends. Further, she exhibited the ability to stay on task over an extended period of time. [Tr. 25-26] Accordingly, Romero's testimony concerning the severity of SBG's impairments was not supported by the reports of *any* physicians and the ALJ did not err by failing to make a specific credibility finding regarding the Plaintiff's testimony. The ALJ's thorough discussion of the medical evidence is an implicit rejection of Romero's lay testimony.

### B. ALJ Was Not Required to Obtain Additional School Records.

The ALJ has a duty "to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000). This duty to fully and fairly develop the record may rise to a special duty when the claimant is unrepresented. *See Lashley*, 708 F.2d at 1051-52. A claimant, however, ultimately bears the burden of proving that she is disabled and is therefore responsible for producing evidence in support of her claim. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986). Romero contends that this matter should be reversed and remanded so that the ALJ may "get the school records of [SBG] and fully investigate her case." [Record No. 14-1, p. 13] Although the Court must carefully scrutinize the record where a claimant appears before the ALJ without counsel, reversal is not warranted automatically. *Lashley*, 708 F.2d at 1052. In determining whether reversal is warranted, the Court must determine whether the record reveals evidentiary gaps

which result in unfairness or clear prejudice.[3] *See Brown v. Shalala*, 44 F.3d 931, 935-36 (11th Cir. 1995).

The agency received only a partially completed teacher questionnaire from Paces Creek Elementary despite its efforts to obtain school records. [Tr. 205-08] The questionnaire indicates that SBG, then a sixth-grader, performed at a third grade level in math and reading. [Tr. 205] Romero has not explained how additional school records might impact the ALJ's findings. When Dr. Timothy Baggs performed a consultative examination during SBG's sixth-grade year, the Plaintiff reported that SBG had been enrolled in special education classes since the first grade. [Tr. 295] At the time of Baggs' evaluation, SBG had recently received three A's, a C, and an F on her report card. *Id.* The Wide Range Achievement Test indicated that SBG's academic ability was several levels below her actual grade level—consistent with the report from Paces Creek Elementary.

Extensive treatment records from Cumberland River also provide insight into SBG's level of intellectual functioning. Later records include a report from SBG's teacher stating that her falling grades were attributed to absenteeism. [Tr. 684] SBG repeatedly complained of bullying and advised her therapist that she did not like school, stating that she wanted to "go on homebound." [Tr. 679-697] There is nothing to suggest that absence of additional school records resulted in unfairness or prejudice to Romero.

---

[3] The Court is also mindful that the ALJ counseled Romero regarding options for obtaining low-cost/no-cost representation and postponed the hearing so that she might do so. But she ultimately proceeded without a representative and submitted a signed waiver of representation. [Tr. 130] Further, the agency provided Romero with instructions regarding procedures for reviewing and obtaining copies of SBG's school records under the Federal Educational Rights and Privacy Act ("FERPA"). [Tr. 64-65] There is no indication that the Romero attempted to review or obtain school records.

### C. The ALJ Did Not Err By Conducting the Hearing Outside SBG's Presence.

Finally, Romero contends that it was reversible error for the ALJ to conduct the hearing outside the presence of SBG, a minor. [Record No. 14-1, p. 14] Specifically, she contends that the ALJ excluded SBG from the hearing, violating her constitutional right to participate in the proceedings and "confront [her] accuser." *Id.* However, as Romero previously pointed out in her memorandum, a social security proceeding is not adversarial, and SBG was not being accused of anything. Further, when the ALJ indicated that he did not intend to question SBG, Romero responded: "Thank you. She'll be happy. I'd like to never have gotten her in here." [Tr. 51] As the Commissioner has noted, this is entirely consistent with HALLEX I-2-6-60(C), which provides that the ALJ may excuse the claimant from a hearing when "[t]he claimant is a minor, the claimant's attendance is no longer needed, a guardian or appointed representative will be present through the remainder of the hearing, and a responsible person who is not an agency employee can wait with the minor while the hearing continues." Accordingly, Romero's argument is without merit.

### D. The Commissioner's Decision is Supported by Substantial Evidence.

Edward Stodola, Ph.D. reviewed SBG's file on April 20, 2012, and examined each of the six domains of functioning. [Tr. 309-14] Based on the results of Baggs' examination and the available school records, Stodola found that SBG had marked limitations in only one area—attending and completing tasks. Jane Brake, Ph.D. reviewed SBG's file on August 18, 2012, and reached a similar conclusion. [Tr. 315-20]

The ALJ engaged in a thorough discussion of the six domains of functioning and concluded that SBG possessed less than marked limitations in her abilities to acquire and use information and interact with others. [Tr. 26-27] He cited Dr. Baggs' conclusions regarding

SBG's full scale IQ (89) and lack of an autism diagnosis in concluding that SBG's ability to acquire and use information was not markedly limited. *Id.* With respect to her ability to interact with others, SBG had reported having several friends and had performed well in group therapy over a period of years. [Tr. 27]

The ALJ assigned great weight to opinions of Stodola and Brake, as they were most consistent with the evidence of record. [Tr. 26] Further, the ALJ explained that moderate weight was given to treatment notes from Cumberland River. *Id.* Among other reasons, the treatment notes failed to explain the inconsistency in SBG's behavior when her mother was present as opposed to private counseling sessions. *Id.* Based on the foregoing, the ALJ's decision that SBG had marked limitation in only one area (attending and completing tasks) is supported by substantial evidence.

## V. CONCLUSION

Substantial evidence supports the administrative decision that SGB is no longer disabled under the Social Security Act. Likewise, each of the Plaintiff's arguments to the contrary are without merit. Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1. Plaintiff Pamela Romero's Motion for Summary Judgment [Record No. 14] is **DENIED**.

2. Defendant Commissioner Nancy A. Berryhill's Motion for Summary Judgment [Record No. 16] is **GRANTED**.

3. The administrative decision will be **AFFIRMED** by separate Judgement entered this date.

This 8th day of January, 2018.



Signed By:
*Danny C. Reeves* DCR
United States District Judge